UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| OrthAlliance,, Inc., | ) | Civil Action No. 8:08-2591-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **O R D E R** |
| Beechard (a/k/a B.C.) McConnell, | ) | |
| Jr., Beechard McConnell, III, and | ) | |
| Anderson Orthodontic Associates, | ) | |
| Inc., | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff OrthAlliance, Inc., a Delaware Corporation, initiated this action in federal court on July 18, 2008 against the defendants, South Carolina residents, alleging breach of contract and related claims. The Complaint was subsequently amended, and an Answer was timely filed. The Court granted the plaintiff leave to file a Second Amended Complaint which was filed on May 13, 2009. The Defendants filed an Answer to the Second Amended Complaint and Counterclaim on June 4, 2009, and the plaintiff filed a Reply to the Counterclaim on June 12, 2009.

Plaintiff alleges the following causes of action: (1) Breach of Contract against defendants McConnell, Jr. and Anderson Orthodontic; (2) Breach of Contract based on a non-compete clause against McConnell, Jr.; (3) Anticipatory Repudiation against McConnell, Jr. and Anderson Orthodontic; (4) Quantum Meruit/Unjust Enrichment against McConnell, Jr. and Anderson Orthodontic; (5) Successor Liability against McConnell Orthodontics; (6) Fraudulent Transfer in violation of S.C. Code Ann. § 27-23-10 against McConnell, Jr. and Anderson Orthodontics; (7) Accounting; (8) Tortious Interference with Contractual Relations against McConnell, III and MOPC; (9) Civil Conspiracy

1

against all defendants; and (10) Violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 against all defendants.

Defendants have filed counterclaims against the plaintiff seeking (1) Declaratory Judgment that the contracts between the plaintiff and defendants McConnell, Jr. and Anderson Orthodontics are null and void; (2) Accounting regarding shortfall advances; and (3) Attorneys' fees as a prevailing party under the contract.

Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the basis that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law.[1] The grounds for the motion are that (1) the contract between Defendants McConnell, Jr. and Anderson Orthodontic and Plaintiff or its predecessor is an illegal contract and therefore unenforceable; (2) the doctrine of collateral estoppel bars the plaintiff from proceeding on the contract based on a ruling of United States District Judge Sarah S. Vance of the Eastern District of Louisiana on October 30, 2008 in Case Number 06-cv-2938, *Cary White Brown, BDS, PC, et al vs OCA, Inc., et al*; (3) defendants have fulfilled all of their obligations under the contract as a matter of law; and (4) there are no disputed facts "which indicate that Defendants have breached a contract with Plaintiff." (Motion for Summary Judgment, Docket Entry # 55).

Plaintiff filed a Response to the Motion for Summary Judgment and a Motion for Certification to the South Carolina Supreme Court on September 28, 2009, Docket Entry #62. Defendants filed a Reply to the Response on October 15, 2009.

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The Court believes the matter is adequately briefed and that a hearing is not necessary.

**FACTS**

This action arises out of a "Service Agreement"[2] dated April 1, 1997. This contract was entered into between defendant Anderson Orthodontic Associates, P.A., a professional association owned by defendant Beechard McConnell, Jr., (a licensed orthodontist, hereinafter referred to as "McConnell, Jr.") and Premier Orthodontic Groups, Inc., a corporation which provided business services to orthodontists. Defendant McConnell, Jr. was an employee of Defendant Anderson Orthodontic Associates, P.A. under an Employment Agreement. The Service Agreement was amended in various respects on July 2, 2002 and reflects as parties to the contract Defendants Anderson Orthodontic Associates, P.A. and McConnell, Jr., and Plaintiff OrthAlliance, who was a successor corporation to Premier.

The contract provided that Plaintiff would provide practice management, "financial and marketing services, and such facilities, equipment, and support personnel as reasonably required to operate its practice. . ." All funds collected by the P.A. were to be deposited into a bank account in the name of the P.A., but Plaintiff "shall make all disbursements therefrom." ¶ 1.11(a). "In the event the funds in the Orthodontic Entity Account will, at any time, be insufficient to cover current expenses, Premier shall notify the Orthodontic Entity and Premier shall advance to the Orthodontic Entity the necessary funds to pay current expenses for the benefit of the Orthodontic Entity, which advances will be deemed to be loans to the Orthodontic Entity to be repaid upon such terms as agreed to by the Orthodontic Entity and Premier, which indebtedness shall be deemed a Center Expense. . ." ¶ 1.11 (b).

The contract also provides for "Service Fees" to be paid to Plaintiff for its services. The method of calculation of this fee is set forth in section 3.1 of the original contract as follows and has not been

---

[2] The parties refer to this agreement as the "BSA," or Business Service Agreement.

amended:

>    3.1 <u>Service Fees</u>.  Premier shall receive an annual Service Fee, subject to the provisions of <u>Section 3.3</u> below, of 17% of the Adjusted Gross Revenue (based on accrual method of accounting).  Except as otherwise provided, the amounts to be paid to Premier under this <u>Section 3.1</u> shall be payable monthly.  The amounts shall be paid based upon the pervious month's operating results of the Center. . . [I]n addition to the Service Fee, the Orthodontic Entity shall pay to Premier 25% of the reduction, if any, of the Center's annual overhead percentage as compared to the immediately preceding year as reasonably determined by Premier, multiplied by the current year's Adjusted Gross Revenue. . .

Regarding termination, the amended contract provides:

> 4(b) Doctor's Termination.
> The Doctor may, at his or her election, terminate his or her employment by
> [Anderson Orthodontic] in the Practice (the Doctor's Termination") at any time
> after the later to occur (the "Minimum Employment Period Date") of
> (1) November 9, 2004 (which date is the third anniversary of the effective date
>  of the Merger), or (2) the current expiration date of the initial term of the
> Employment Agreement, in each case by completing each of the
> following:
>
> (i) Giving [OrthAlliance] and [Anderson Orthodontic] prior written
> notice of such termination (the "One Year Notice) at least one year
> prior to the date of such termination, which One Year Notice may be
> given beginning one year prior to the Minimum Employment Period Date;
>
> (ii) Completing either (A) a Sale of the Practice with an Approved Successor
> Orthodontist,   or (B) a Practice Transfer with a Designated Orthodontist
> designated by [OrthAlliance] (as each term is
> defined below); and
>
> (iii) Cooperating with [Anderson Orthodontic], [OrthAlliance] and the Successor
> Orthodontist (as defined below) in transitioning the Practice, its
> patients and Professional Assets (as defined below), and, if applicable,
> [Anderson Orthodontic] and its capital stock, to such Successor Orthodontist.

Plaintiff contends that Defendants breached the agreement by terminating McConnell, Jr.'s employment with Anderson Orthodontic and "attempting to dissolve and transferring the assets of Anderson Orthodontic without complying with the terms of the BSA and Amendment." (Second

4

Amended Complaint, ¶ 58). OrthAlliance also contends that Dr. McConnell, Jr. breached the non-compete clause in the contract and alleges various related claims.

## PLAINTIFF'S MOTION TO CERTIFY

Plaintiff requests the Court to certify certain questions to the South Carolina Supreme Court pursuant to South Carolina Appellate Rule 228 which permits federal courts to certify questions "if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." Rule 228, SCACR.

Plaintiff requests the Court to certify the following questions:

**(1)** Under South Carolina law, is OrthAlliance engaged in the unlawful "corporate practice of dentistry" as a result of the services it provides to Anderson Orthodontic under the BSA? And, **(2)(a)** Does OrthAlliance's contractual relationship with Anderson Orthodontic render those entities partners under South Carolina law? And **(b)** If so, does a partnership between Anderson Orthodontic and OrthAlliance violate the South Carolina Professional Corporations Act, S.C. Code Ann. § 33-19-101 *et seq.*, and, if so, what is the remedy?

In requesting certification, Plaintiff asserts that it is unclear under South Carolina common and statutory law whether the corporate practice doctrine applies to dentistry at all. Plaintiff also contends that the only South Carolina case that arguably supports the defendants' claim is an outdated 1938 case regarding optometry that may have been superseded by a statute relating to the practice of optometry.

The seminal South Carolina case is *Ezell v. Ritholz*, 188 S.C. 39, 198 S.E.419 (1938). In *Ezell*, the court states:

> If such a course were sanctioned the logical result would be that corporations and business partnerships might practice law, medicine, **dentistry** or any other profession

5

by the simple expedient of employing licensed agents. And if this were permitted professional standards would be practically destroyed, and professions requiring special training would be commercialized, to the public detriment. The ethics of any profession is based upon personal or individual responsibility. One who practices a profession is responsible directly to his patient or his client. **Hence he cannot properly act in the practice of his vocation as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in character**.

*Ezell*, 198 SE at 424 (emphasis added).

The Supreme Court specifically refers to dentistry as the practice of medicine. Therefore, there would be no reason to certify the issue on the first basis asserted by the plaintiff. Plaintiff next contends that a July 1, 2005 amendment to the Optometry Act allowing a corporation to practice optometry supersedes *Ezell*. S.C. Code Ann. § 40-37-390 does refer, in connection with prohibiting unlawful advertising practices, to "a person, partnership, or corporation that provides optometric services". However, the Court construes the statute as applying to professional corporations. *See* S.C. Code Ann. § 33-19-101, *et seq*., and Reporter's Comments. The South Carolina Reporter's Comments state:

> A professional corporation differs from any other corporation in four important respects: (1) unless otherwise authorized by statute or regulation, a professional corporation can engage only in the practice of a single profession; (2) only licensed professionals can be shareholders of a professional corporation; (3) a shareholder in a professional corporation is liable personally for his own malpractice . . . but is not liable for the malpractice of the other professionals in the professional corporation. . . unless he is at fault in appointing, supervising, or cooperating with them; and (4) "professional corporation", "service corporation", or "chartered" must be used in the corporate name and included on all letterheads, contracts, and advertising materials . . .
>
> The Professional Corporation Supplement to the Model Business Corporation Act is much more complete, particularly with respect to matters of corporate procedure, than the 1962 South Carolina Professional Association Act. However, it does not alter radically the basic rights of professional corporation shareholders or their clients.

6

*See also*, 61 AM JUR. 2D, *Physicians, Surgeons, Etc*. § 116 (2010) ("The traditional rule that corporations cannot practice a profession has been changed by statute in many states, permitting individuals who are licensed to practice a profession to form a corporation for the practice of that profession . . . Statutes authorizing the practice of medicine through professional corporations or associations differ in their provisions, but they are all designed to achieve the same result–a tax break for the professional person.")

*Ezell* has not been overruled and in fact has been cited with approval by *Wadsworth v. McRae Drug Co.*, 203 S.C. 543, 28 S.E.2d 417, 419 (1943) ("It is quite true . . . that a corporation may not engage in the practice of medicine even through licensed employees."); *McMillan v Durant*, 312 S.C. 200, 439 S.E.2d 829, note 2 (1993) ("A hospital as an entity cannot practice medicine, diagnose an illness, or establish a course of treatment . . ."); *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69, 78 (1999) ("South Carolina has a common law prohibition against the corporate practice of medicine.") Therefore, the Court finds that the original purpose of the prohibition of the practice of medicine by corporations still exists, that being to "preserve to the client the benefit of a highly confidential relationship, based upon personal confidence, ability, and integrity." 18B AM. JUR. 2D *Corporations*, § 1826 (2010).

Plaintiff also relies on an amendment to the South Carolina Dental Practices Act in 2000 in contending that the above case law no longer applies to dentistry. S.C. Code Ann. § 40-15-83(A) provides, regarding patient recordkeeping for dentists, that "[i]f a dentist is employed by a corporation or another dentist, the corporation or employing dentist is responsible for maintaining the patient records for a period of five years." The Court does not read this statute as intending to abrogate the common law prohibition against the practice of dentistry by non-licensed entities.

Professionals may be employed by professional corporations or associations, as discussed above. *See* S.C. Code Ann. § 33-19-200. Additionally, the regulations of the South Carolina Board of Dentistry prohibit "split fees". *See* Reg. 39-11(1-H).[3] The Court finds South Carolina common and statutory law sufficiently clear to rule on the issues presented. Thus, the motion to certify is denied.

**LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.*, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Summary judgment should only be granted in those cases where there is no issue of fact involved and inquiry into the facts is not necessary to clarify application of the law. *McKinney v. Board of Trustees Mayland Community College*, 955 F.2d 924 (4th Cir. 1992). A district court should

---

[3] "A corporation not licensed to practice medicine may not hire health-care professionals, assign patients to them, and split fees with the health-care professionals." 70 C.J.S. *Physicians and Surgeons*, Section 168.

8

not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances." *Campbell v. Hewitt, Coleman & Assoc.*, 21 F.3d 52, 55 (4th Cir. 1994).

## **ANALYSIS**

By Consent Order dated October 15, 2009, Docket Entry # 70, this Court stayed the deadlines in the scheduling order pending resolution of the motion to certify. The parties have accordingly not yet engaged in significant discovery. Plaintiff contends that, if its motion to certify is denied, then the parties should engage in discovery before the Court considers the motion for summary judgment. The Court disagrees. Here, the plaintiff's claims are based on the undisputed written contract submitted to the Court. Under South Carolina law, if the terms of a contract are plain and unambiguous, the construction of the contract is a question of law which may be resolved on summary judgment. *HK New Plan Exchange Property Owner I, LLC v. Coker*, 375 S.C. 18, 649 SE2d 181 (S.C. Ct. App. 2007). Here, the terms of the contract are unambiguous and violate the prohibition on the corporate practice of dentistry by non-licensed entities.

Under the contract, although OrthAlliance claims that it merely received a service fee for providing non-clinical business and administrative services, OrthAlliance and Anderson Orthodontic were essentially sharing the practice's profits which is specifically prohibited by common law and regulation in South Carolina. OrthAlliance's service fee was 17% of gross revenue. Additionally, the Court is also concerned by the extent of control which the contract gives the plaintiff as to the conduct of the orthodontic practice. Under the agreement, OrthAlliance was responsible for employing and training office staff, providing and maintaining office space, marketing and advertising, and handling payroll. It handled the P.A.'s bookkeeping and financial matters and controlled the practice's bank

9

account. It also controlled the disbursement of funds and leases of offices and owned the office equipment. Finally, it had broad involvement with any expansion into new offices and hiring of new orthodontists. Since this business arrangement gave OrthAlliance a high degree of control over the practice's operations and a beneficial interest in the practice's profits, there was a risk that OrthAlliance could influence and interfere with Dr. McConnell's professional judgment. Under such an arrangement, Dr. McConnell could feel responsible to OrthAlliance, rather than his patients. *See Ezell*, 198 SE 424, which notes that "one who practices a profession is responsible directly to his patient" and cannot act "as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in character." Such an arrangement violates South Carolina's prohibition on the corporate practice of dentistry, other than professional corporations.[4] That the BSA expressly provides that OrthAlliance does not practice dentistry does not alter this conclusion. Neither does the fact that the BSA describes the orthodontist as an independent contractor. The court should "look beyond the face of the agreement to determine whether in reality the corporation was practicing without a license." *See* S.C. Op. Att'y Gen., 1982 WL 189119 (1982).[5]

In this case, although the contract states that its provisions "shall be deemed severable" in ¶ 7.8, the Court finds the majority of the contractual provisions are interdependent and not severable. *See Columbia Architectural Group, Inc. v. Barker*, 266 S. E.2d 428, 429 (S.C. 1980) ("A contract is entire,

---

[4] The defendant orthodontist, "who participated in the illegal arrangement when it suited [his] purposes to do so [is] not entirely without blame . . ." *United Calendar Mfg. Co*., 94 A.D.2d 176, 463 N.Y.S.2d 497, 500 (1983). However, the Court cannot enforce an illegal contract. "That the defendant may profit from the court's refusal to intervene is irrelevant. What is important is that the policy of the law be upheld." *Id*.

[5] Defendants also contend that the parties were partners and that any partnership was also illegal. The Court agrees that, if a partnership existed between the parties, then it was also illegal.

and not severable, when by its terms, nature, and purpose it contemplates and intends that each and all of its parts, material provisions, and the consideration are common each to the other and interdependent." Under South Carolina law, a party may not enforce an illegal contract. *See Beach Co. v. Twillman, Ltd.*, 566 S.E.2d 863, 867 (S.C. Ct. App. 2002). Claims that derive solely from an illegal agreement are unenforceable. *See Jackson v BiLo Stores, Inc*., 313 S.C. 272, 437 SE2d 168 (SC Ct. App. 1993). In this case, all of Plaintiff's claims except the claim for breach of contract which relates to the alleged shortfall advances are premised on the parties' illegal relationship and are thus unenforceable. The shortfall advances allegedly made by the plaintiff to defendant PC were in reality loans to the P.A. Therefore, the Court finds that ¶ 1.11(b) of the contract relating to shortfall advances is severable from the rest of the contract and is enforceable.

If the provisions of the contract relating to shortfall advances were not deemed severable from the illegal contract, then the plaintiff would still be entitled to pursue an unjust enrichment claim for loans made to the defendant as to which the defendant received a benefit.[6]

## **CONCLUSION**

For the foregoing reasons, the undersigned **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment.[7] The motion is GRANTED as to all of the plaintiff's claims except the portion of the First Cause of Action for Breach of Contract relating to shortfall advances, as to which the motion is DENIED. The Plaintiff's Motion to Certify is also DENIED.

---

[6] Defendant appears to recognize that such a claim may exist based on its Third Defense and Counterclaim, which is a request for an accounting relating to the short fall advances claimed by the plaintiff. (Docket Entry #46).

[7] Since the Court finds the contract to be unauthorized practice of dentistry and thus not enforceable in most respects, it is not necessary to address the defendants' collateral estoppel argument.

**AND IT IS SO ORDERED.**

                                                    <u>s/ R. Bryan Harwell</u>
                                                    R. Bryan Harwell
                                                    United States District Court Judge

March 30, 2010
Florence, South Carolina